UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                            :
DHANNA SINGH, (a.k.a. Dhanvir Toora)   :
an individual,                              :
                                            :    Civil Action No.: 07-6162 (FLW)
            Plaintiff-Petitioner,           :
                                            :               OPINION
      v.                                    :
                                            :
EDMOND C. CICCHI, et al.,                   :
                                            :
            Defendants-Respondents.         :
_____:

**WOLFSON, United States District Judge**,

Petitioner Dhanna Singh (a/k/a Dhanvir Toora) ("Singh" or "Petitioner") is currently detained in a facility in Perry, Alabama awaiting removal to India pursuant to a 1997 order of Immigration Judge ("IJ"). He brings the instant immigration suit against Respondents, Edmond C. Cicchi ("Cicchi"), in his official capacity as Warden of Middlesex County Adult Correction Center; Scott Weber ("Weber"), in his official capacity as Field Officer Director for Detention and removal Operations, Newark District Office; Julie L. Meyers ("Meyers"), in her official capacity as Assistant Secretary of United States Immigration and Customs Enforcement; Emilio T. Gonzalez ("Gonzalez"), in his official capacity as Director of the Citizenship and Immigration Services; Michael Chertoff ("Chertoff"), in his official capacity as the Secretary of the United States Department of Homeland Security; and Michael B. Mukasey ("Mukasey"), in his official capacity as Attorney General of the United States (collectively, "Respondents"), challenging his removal order by arguing that the rescission of his grant of asylum is a violation of his substantive and procedural due process rights. As such, he seeks mandamus and declaratory relief, as well as a writ of habeas corpus. Presently before the Court is Respondents' motion to dismiss Petitioner's

complaint. For the reasons set forth below, the Court finds that Petitioner's asylum claims challenging his removal are outside this Court's jurisdiction and therefore his habeas petition will be dismissed without prejudice.

## BACKGROUND

On February 26, 1995, Singh, a native and citizen of India, entered the United States near Brownsville, Texas without inspection. (Ex. 1) He was taken into custody under the name Dhanvir Toora (Ex. 1) and ordered to show cause why he entered without inspection on February 27, 1995. (Ex. 2.) He was released on bond (Ex. 5), and went to live with his brother-in-law in Long Island City, New York. (Ex. 6.) Singh was scheduled for an April hearing before an IJ in Los Fresnos, Texas. (Ex. 7.) However, Singh then voluntarily left the United States on March 23, 1995 to visit his family in India. Respondents dispute this egress from the United States, believing that Singh never left. On April 3, 1995, the IJ in Texas, unaware and uninformed of Singh's departure, ordered Singh deported in absentia. (Ex. 8.) Singh's deportation order (Ex. 10) became final on May 3, 1995, when the time period for Singh to appeal his deportation order before the Board of Immigrantion Appeals ("BIA") expired. (Ex. 8.)

On August, 27 1995, Singh returned to the United States from India, although this is disputed by Respondents. Under the name Dhanna Singh, Singh applied to the San Francisco Asylum Office for asylum on September 9, 1995, based on his membership in a persecuted student group and religion in India for which he was tortured. (Ex. 11) Singh did not reveal that he was previously ordered deported under the name Dhanvir Toora. (Ex. 11.) The San Francisco Asylum Office granted Singh's asylum on October 30, 1995. (Ex. 12); (Ex. 13.) Singh maintained his asylum grant and lived in the United States for 12 years.

On April 10, 1997, Singh filed for an adjustment of his status. (Ex. 14.) On December 6, 2006, officer RJH423 of the U.S. Citizenship and Immigration Services ("CIS") filed an interoffice memorandum noting that Dhanna Singh and Dhanvir Toora were the same person.[1] (Ex. 15.) On March 28, 2007, CIS notified Singh that, pursuant to 8 C.F.R. § 103.5(a)(5)(ii), CIS was reconsidering Singh's grant of asylum and intending to rescind his asylum status because only the IJ had jurisdiction over asylum applications of a person placed in deportation, pursuant to 8 C.F.R. § 208.2(b). (Ex. 16.) Singh attempted to rebut this rescission by arguing that he had self-executed the deportation order when he left the United States on March 23, 1995. (Ex. 17.) Singh provided affidavits, a personal statement, and a hospital letter from India in support of his argument. (Ex. 17.) However, Singh did not provide evidence of entry to or exit from India. (Ex. 17.) On June 28, 2007, CIS considered the rebuttal information provided by Singh and deemed it insufficient to overcome the grounds for rescission. As such, CIS rescinded Singh's grant of asylum. (Ex. 18.)

On July 11, 2007, Singh was taken into custody by Immigrations and Customs Enforcement ("ICE") and detained based on the outstanding April 3, 1995 deportation order. (Ex. 25.) Singh was issued a Warrant of Removal/Deportation and a Warning to Alien Ordered Removed or Deported on July 16, 2006. (Ex. 19; Ex.20.) Initially, Singh was confined at the Middlesex County Adult Correction Center in New Brunswick, NJ. ICE made a formal request to the Indian Consulate to obtain travel documents for Singh on September 19, 2007. (Ex. 24.) Singh was presented in person to the Indian Consulate on November 2, 2007. (Ex. 25.) The Indian Consulate orally informed ICE that it believed Singh to be Dhanna Singh, but Singh refused to cooperate in this inquiry as to his

---

[1] It is unclear why there is an almost 9-year-gap between Petitioner's application for adjustment of status (Ex. 14) and INS's discovery that Dhanvir Toora and Dhanna Singh were the same person during the process of adjudicating the adjustment of status application. Ex. 14 has multiple time-stamps, including April 1, 1997; April 10, 1997; April 16, 1997; April 30, 1997; and June 22, 2004.

identity. (Ex 22; Ex. 23.) Consequently, Singh was deemed "non-compliant" by his custody review on November 7, 2007, for not providing evidence of his true identity. (Ex. 25, 7.) The deciding official recommended Singh remain in custody and that ICE retain jurisdiction until Singh provides evidence of his true identity or information that can be researched by the Indian Consulate to establish his true identity. (Ex. 25, 7.) CIS issued a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g), informing Singh that he was still within the removal period, and would remain in custody until he demonstrated he was making reasonable efforts to comply with his deportation order. (Ex. 27.)

Singh filed this present action on December 28, 2007, challenging the rescission of his grant of asylum on substantive and procedural due process grounds, as well as petitioning for the grant of a writ of habeas corpus pursuant to 28 U.S.C. § 2241. On February 20, 2008, Singh was transferred to the custody of a facility in Perry, Alabama.

## DISCUSSION

### I. Jurisdiction

#### a. Jurisdiction over Challenges to Removal Order

Singh challenges the deportation order entered against him on April 3, 1995, by the IJ in Los Fresnos, Texas, based on his October 30, 1995 subsequent grant of asylum. Respondents argue that this Court is without jurisdiction to hear Petitioner's asylum matters. This Court agrees. Singh asserts that he is entitled to remain in the United States, notwithstanding the removal order, because his asylum status was illegally rescinded by Respondents. Without delineating his arguments in detail, it suffices to say that essentially Petitioner's arguments challenging his underlying asylum status directly implicate his removal order. As such, these arguments should be brought in the Court of Appeals for the Fifth Circuit pursuant to the REAL ID Act. See 8 U.S.C. § 1252(a)(5).

In a strikingly similar case, <u>Seck v. Bureau of Immigration and Customs Enforcement</u>, a petitioner also filed in the District Court of New Jersey a habeas application along with his challenge to asylum findings made by an IJ and BIA as incorrect. <u>Seck v. Bureau of Immigration and Customs Enforcement</u>, No. 07-2360, 2007 U.S. Dist. LEXIS 49607, at *4 (D.N.J. July 10, 2007). However, without reaching the substantive merits of petitioner's challenge to the IJ and BIA's asylum findings, the court in <u>Seck</u> held that "this Court lacks jurisdiction over <u>any</u> claims asserted by Petitioner which seek to challenge his underlying removal order, pursuant to the REAL ID Act." <u>Id.</u> (citing 8 U.S.C. § 1252(a)(5)) (emphasis added). The driving distinction for jurisdiction purposes is discussed below:

> We must be careful to maintain the distinction Congress made in the REAL ID Act between those challenges that must be transferred and those that must be retained in and decided by the district court. Arguably, any challenge by an alien who seeks to remain in this country could be construed as challenging his or her "removal, deportation, or exclusion," but such a broad interpretation would be counter to Congress' express intent. Instead, only challenges that directly implicate the order of removal . . . are properly the subject of transfer under the REAL ID Act.

<u>Nnadika v. AG of the United States</u>, 484 F.3d 626, 632 (3d Cir. 2007).

Here, Singh was ordered deported <u>in absentia</u> by the Immigration Court in Los Fresnos, Texas on April 3, 1995. Singh offers several reasons why his removal order should be dismissed: that he left the United States on March 23, 1995, that this egress constituted a self-execution of a deportation order that did not (at that time) exist, that his later asylum application was properly before the San Francisco Asylum Office, that the rescission of his asylum constituted <u>ultra vires</u> agency action, and that such rescission constitutes a substantive and procedural due process violation of his vested property interest. However, pursuant to the REAL ID Act, any challenge directly implicating that 1995 order of removal must be brought in the court of appeals embracing the Immigration Court which issued the removal order; in the instant case that court is the Court of Appeals for the Fifth Circuit. This Court does not have jurisdiction over challenges to Singh's

present removal proceedings because any decision rendered by this Court with regard to Singh's contentions would necessarily reach Singh's underlying substantive claims. Indeed, the Real ID Act of 2005 instructs that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order. . . . [N]o court shall have jurisdiction, by habeas corpus under [28 U.S.C. § 2241] . . . to review such an order of such question of law or fact." Sapunxhiu v. Mukasey, No. 06-3975, 2008 U.S. Dist. LEXIS 10031, at *10 (D.N.J. Feb. 8, 2008) (quoting 8 U.S.C. § 1252(b)(9)) (emphasis added). Further, any challenge to the Government's present action, namely removing Petitioner from the United States, including petitions for mandamus and declaratory relief directly implicating the order of removal, also falls within the ken of the REAL ID Act. See 8 U.S.C. § 1252(a)(5).

While it appears from the record and the arguments of counsel that Singh may have significant substantive and procedural due process challenges to make regarding his removal proceedings, this Court is not the proper forum to entertain them. On April 3, 1995, the IJ in Texas, unaware and uninformed of Singh's alleged departure, ordered Singh deported in absentia. Singh's deportation order became final on May 3, 1995, when he failed to appeal to the BIA within the 30-day time period provided. A final removal order[2] having been entered, Singh's constitutional arguments are now reviewable by the Court of Appeals for the Fifth Circuit. See Ashley v. Ridge, 288 F. Supp. 2d 662, 667 (D.N.J. 2003) ("The Immigration Court and Board of Immigration Appeals are courts of limited jurisdiction that cannot consider constitutional claims"). Indeed, the Real ID

---

[2] "[A]n order reinstating a prior removal order is 'the functional equivalent of a final order of removal.'" Dinnal v. Gonzales, 421 F.3d 247, 251 n.6 (3d Cir. 2005) (quoting Arevalo v. Ashcroft, 344 F.3d 1, 9-10 (1st Cir. 2003)).

Act states that for a removal order the "sole and exclusive means for judicial review" will be a "petition filed with [the] appropriate court of appeals." See 8 U.S.C. § 1252(a)(5). As such, Petitioner's arguments regarding his asylum status must be pursed before the circuit court. Furthermore, Petitioner's request for attorney's fees and costs against Respondents relating to his removal is denied pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, because this Court lacks jurisdiction.

### II. Habeas Corpus

On July 11, 2007, Singh was taken into custody by the ICE to execute the deportation order entered against him on April 3, 1995. Singh was confined at the Middlesex County Adult Correction Center in New Brunswick, NJ. On February 20, 2008, Singh was transferred to a facility in Perry, Alabama. Singh seeks to challenge his detention pending his removal by arguing that his asylum is valid.[3] On the other hand, Respondents assert that habeas relief should be denied on procedural grounds because Petitioner has failed to cooperate with his deportation order and that his asylum status was properly rescinded. For the reasons set forth above, this Court does not have jurisdiction over Petitioner's substantive arguments regarding the rescission of Petitioner's asylum or the underlying removal, but may reach procedural issues regarding his current post-removal-order

---

[3] This Court has jurisdiction over writs of habeas corpus pursuant to 28 U.S.C. § 2241. See Nma v. Ridge, 286 F. Supp. 2d 469, 472 (E.D. Pa. 2003) (citing 8 U.S.C. § 1252(a)(2)(B)(ii)(1994)) ("[Habeas j]urisdiction extends to questions of law but does not extend to factual or discretionary determinations of the government"). Jurisdiction over a habeas petition brought pursuant to § 2241 is limited to the district where the petitioner is being held in custody. 28 U.S.C. § 2241. Singh was taken into custody in the District of New Jersey on July 11, 2007. Singh was moved to Perry, Alabama on February 20, 2007 after filing his habeas petition against his immediate custodian, Respondent Edmond Cicchi. "[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." Rumsfeld v. Padilla, 542 U.S. 426, 441 (2004) (citing Ex parte Mitsuye Endo, 323 U.S. 283, 307 (1944) ("[The objective of habeas] may be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court"); see also Chavez-Rivas v. Olsen, 194 F. Supp. 2d 368, 371 (D.N.J. 2002) ("Both the Supreme Court of the United States and the Third Circuit have held that the transfer of a habeas petitioner to another judicial district after the filing of a habeas corpus petition does not defeat the original District Court's jurisdiction to entertain the petition") (citations omitted). As such, jurisdiction regarding Singh's habeas writ falls within this court's jurisdiction and Respondent's do not dispute this Court may retain jurisdiction over Singh's habeas petition. (Answer 4 n. 2.)

detention.[1]

Detention of aliens post-removal-order is governed by 8 U.S.C. § 1231(a). "Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day 'removal period.'" Tchikava v. Chertoff, No. 07-5480, 2008 U.S. Dist. LEXIS 42462, at *5 (D.N.J. May 29, 2008).

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). "Section 1231(a)(6) permits continued detention if removal is not effected within 90 days." Tchikaya, 2008 U.S. Dist. LEXIS 42462 at *6. "[T]he Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard. Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a detained alien must be released if he can establish that his removal is not reasonably foreseeable." Id. (citations omitted); see also Zadvydas v. Davis, 533 U.S. 678, 699 (2001) ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute").

Singh was taken into custody by ICE on July 11, 2007; he submitted his petition for a writ of habeas corpus on December 28, 2007. Although outside the 90-day time period required by

---

[1] It is unclear whether petitioner is being detained pre or post-removal, but either way, his habeas claims fail. If Singh is able to challenge his removal, which is within the jurisdiction of the Court of Appeals for the Fifth Circuit, his detention will be a "pre-removal-order" until the completion of the removal proceedings. It then would be within the discretion of the Attorney General whether to release or detain him pending the removal decision. 8 U.S.C. § 1226(a), (e). Although the Attorney General's exercise of discretion pursuant to 8 U.S.C. § 1226(a) to arrest and detain an alien pending a decision on whether an alien is to be deported is not subject to judicial review, the constitutionality of the detention provision, itself, is subject to judicial review. See Demore v. Kim, 538 U.S. 510, 516-17 (2003). The Supreme Court has emphasized that pre-removal-order detention typically lasts only a few months and has a finite ending point at the completion of the removal proceedings. Id. at 526-531.

Section 1231(a), in which the Attorney General must attempt to effectuate removal, Singh's petition has been made within the presumptively reasonable six-months for continued detention if the alien is not removed within the original 90-days. Even if the six-month presumptively reasonable time period had expired, the burden is on Singh to "provide 'good reason' to believe there is no likelihood of removal." Joseph v. United States, 127 Fed. Appx. 79, 81 (3d Cir. 2005) (quoting Zadvydas, 533 U.S. at 701).

> Once the six-month period has passed, the burden is on the alien to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future . . . ." Zadvydas v. Davis, 533 U.S. 678, 701, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (U.S. 2001). Only then does the burden shift to the Government, which "must respond with evidence sufficient to rebut that showing." Id.

Barenboy v. AG of the United States, 160 Fed. Appx. 258, 261 n. 2 (3d Cir. 2005); see also Ma v. Ashcroft, 257 F.3d 1095, 1098 (9th Cir. 2001) (quoting Zadvydas, 533 U.S. at 701) ("After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing").

Further, an alien who refuses to cooperate with the government's removal efforts may be detained beyond the presumptively reasonable six-months. See 8 U.S.C. § 1253(a). Singh's post-order custody was reviewed on November 7, 2007, at which time it was noted that Singh had been presented to the Indian Consulate September 19, 2007, for the issuance of travel documents to effect the removal order. Singh did not cooperate with the Indian Consulate in efforts to issue him travel documents and, consequently, was deemed non-compliant by ICE.

> Federal courts have recognized that "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003) (cited with approval in U.S. ex

rel. Kovalev v. Ashcroft, 71 Fed.Appx. 919, 924 (3d Cir. 2003).

Tchikaya, 2008 U.S. Dist. LEXIS 42462 at *7. Respondents do not assert that Singh's detention will be indefinite; they intend to release him from custody as soon as he cooperates in the execution of his removal order. Under these circumstances, it appears that Singh will not be able to provide "good reason" that there is no likelihood of removal because Singh's removal order has not been executed due to his own failure to cooperate. In fact, Singh has only provided evidence of his time spent in India; he has failed to present evidence now that there is "no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. Singh must provide such "good reason" should he choose to refile his habeas petition.

As a final note, Petitioner's request for attorney's fees and costs against Respondents relating to his habeas petition is denied pursuant to the EAJA because Petitioner is not the "prevailing party." See 28 U.S.C. § 2412.

## CONCLUSION

This Court, under the REAL ID Act, lacks jurisdiction over any claims challenging Petitioner's underlying order of deportation including mandamus, declaratory relief, substantive due process, and procedural due process challenges that directly implicate his removal order. Although this court has jurisdiction over Petitioner's habeas claim, the six-month presumptively reasonable time for detention provided by the Supreme Court in Zadvydas has not expired. As such, Petitioner's habeas petition is dismissed without prejudice; if Petitioner re-files a petition challenging the reasonableness of his detention, he must provide "good reason" that there is no likelihood of removal.

Date: July 15, 2008

                                                                                   /s/ Freda L. Wolfson

                                                                      FREDA L. WOLFSON, U.S.D.J.